# MEMORANDUM OF POINTS AND AUTHORITIES

## I. STATEMENT OF THE CASE.

Plaintiff Debra Ann Bailey, on behalf of a putative class of all California customers of defendant Household Finance Corporation of California ("Household"), alleges claims for violations of California's Rosenthal Fair Debt Collection Practices Act, Penal Code Section 632 and the Unfair Competition Law. Essentially, Plaintiff claims that Household violated the Rosenthal Act by making too many collection calls, and that Household violated Penal Code Section 632 by failing to disclose to customers that collection calls were being recorded. For purposes of the Section 632 claim, Plaintiff's counsel has requested that Household preserve all recorded calls relating to its business going forward. In addition, Plaintiff's counsel has indicated an intent to add HSBC Bank Nevada, N.A., the credit card issuer affiliated with Household, as a defendant. Counsel has further requested preservation of all calls related to the HSBC Bank Nevada credit card business.

Household and HSBC Bank Nevada are subsidiaries of HSBC Finance Corporation ("HSBC"). HSBC has implemented an extensive call center system for the millions of consumer credit transactions serviced by its various affiliates. The system includes 28 domestic and international call centers from which customer calls are placed and received. Millions of calls emanate from these centers every month. Many of these calls are made to California residents, but the system does not track and segregate calls by State.

While incoming calls on HSBC's various toll free customer service lines automatically include a disclosure that the call is being recorded, outgoing calls from the 28 service centers do not include such an automatic disclosure. Instead, each of the thousands of collection agents is required, as a matter of policy and practice, to give a disclosure before speaking to a customer that the call is being recorded.

Because of the sheer volume of calls, system rules are in place to purge recordings from the system after 30 days or, in some cases, less time. Those system rules have been suspended, necessitating this application.

A percentage of the calls made every month are recorded so that collection agents can be monitored and reviewed by the HSBC Quality group to ensure compliance with HSBC policies and applicable rules and regulations. Reports of the monitored calls are prepared and maintained. These reports note exceptions to policies, including the failure to give the call recording disclosure.

Ostensibly, the purpose of Plaintiff's request to preserve all the recordings is so the millions of calls per month can somehow be reviewed to determine if the call recording disclosure was properly given to putative California class members. The issue for purposes of this *ex parte* application is whether Household and its affiliates should be required to preserve the huge volume of call recordings on a going forward basis, or if the reasonable alternative of producing the call evaluation reports and associated data should be ordered. Alternatively, if preservation is required, Household respectfully requests that it not solely bear the multi-million cost of doing so.

## II.   HOUSEHOLD SHOULD NOT BE REQUIRED TO PRESERVE CALLS.

In assessing whether to limit discovery, the Court may consider whether "the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of issues at stake in the action, and the importance of the discovery in resolving the issues." F.R.Civ.P. 26(b)(2)(C)(iii). The Court also is authorized to limit discovery where "the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive." F.R.Civ.P. 26(b)(2)(C)(i). With respect to evidence preservation specifically, courts balance at least three factors: (1) concern for the existence and

1  maintenance of the evidence in the absence of a preservation order, (2) irreparable
2  harm to the party seeking such evidence absent such an order; and (3) the capability of
3  the party to maintain the evidence, including physical, spatial and financial burdens.
4  *Columbia Pictures Industries v. Bunnell*, 2007 WL 2080419 *9 (C.D. Cal. 2007),
5  *citing Capricorn Power Co. v. Siemens Westinghouse Power Corp.*, 220 F.R.D. 429,
6  432-33 (W.D. Pa. 2004). Consistent with the third factor, the Ninth Circuit Advisory
7  Board has proposed a model rule regarding preservation of electronic data that
8  requires the party seeking preservation to show the "need for preservation, that
9  relevant information, unlikely to be found from another source will be found in the
10 media, and that the need for the information outweighs the cost and burden of
11 searching the media."

12  The declarations attached to this application describe in detail the pertinent call
13 recording and monitoring systems, and demonstrate that the preservation of the call
14 recordings would be a huge financial burden that would severely and adversely impact
15 the business of Household and its affiliates within days, and cripple it within months.
16 The enormous volume of the data would result in Household incurring millions of
17 dollars of costs to preserve it. More importantly, because the infrastructure necessary
18 to preserve all calls is not in place, the preservation of the data will imminently impact
19 the performance of Household's call monitoring systems and other business
20 operations, possibly resulting in total loss of the very data sought to be preserved.
21 This could happen in a matter of few days, weeks or at most, months.

22  The costs associated with preserving the data far outweigh the need for the data.
23 First, there is no way, other than reviewing each of the tens of millions of monthly
24 recordings manually, to segregate calls made to California residents, as opposed to
25 calls made to residents of the other states. The preservation of the call recordings

therefore would be grossly over inclusive and would include tens of millions of calls that are not relevant.[1]

Second, the substance of the recorded conversations are not relevant; the only portion of the calls that is relevant is the beginning of the call when the collection agent reads a disclosure statement that the conversation is being recorded. The policy of Household and its affiliates is that the disclosure must be given at the beginning of every call by every call agent. Agents are trained to give the disclosure, and are monitored to ensure compliance with that policy. If they deviate from that policy, then those deviations are recorded in reports that are maintained by the Quality group in a readily accessible database. Hence, the recordings themselves (which could never be fully reviewed in any event given their sheer number) are unnecessary. The data Plaintiff needs is already available in usable documentary form.

Thus, the only recorded calls that will be relevant are those made to delinquent California borrowers who were contacted by a collection agent who failed to give the required form disclosure. To give the court an idea of the number of potentially relevant calls versus the number of calls sought to be preserved, Household and its affiliates, as part of an ongoing quality assurance program, randomly monitors a statistically significant percentage of all calls each month. About 40,000 consumer lending and credit card calls are monitored per month. From January through April of this year, 80,832 calls to credit card borrowers throughout North America were reviewed. Of those calls, only 157 or 0.2% involved situations where an agent violated company policy by failing to give the required disclosure. The number of errors involving calls to California residents alone necessarily is significantly less.

---

[1] By way of example, the call volume from one of the 28 call centers around the world, that handles credit card accounts alone, exceeded 6 million calls in August 2009.

Household should not bear the burden of preserving tens of millions of calls per month to capture the two-tenths of one percent of calls in which the disclosure was not properly provided. That information is available from an overwhelmingly less burdensome source. Under the circumstances, the ends do not justify the means.

## III. CONCLUSION.

As the foregoing indicates, and the attached declarations demonstrate, preservation of all the recorded calls is neither viable nor necessary and would result in a disproportionate burden and expense. This is particularly true where class certification is highly questionable give the predominance of individual issues, including whether a disclosure was given, whether the disclosure was adequate, *etc.*

In lieu of preservation of the calls, Household respectfully requests that the Court require production of the call monitoring reports, which are prepared in the ordinary course of business. These reports are an accurate and statistically significant sample of the huge volume of calls placed by Household and its affiliates. Those reports sample about 40,000 calls per month and note, among other things, if the call recording disclosure was properly given, the principal issue in this case. On this record, relief from preservation of call recordings is warranted. Alternatively, if preservation is required, Household respectfully requests that the multi-million dollar cost associated with that effort be shifted to or shared by Plaintiff.

Respectfully submitted,

DATED: May 19, 2010                  KATTEN MUCHIN ROSENMAN LLP

By:  /s/ Gregory S. Korman

Gregory S. Korman

Attorneys for defendant HOUSEHOLD FINANCE CORPORATION OF CALIFORNIA