ARLEO LAW FIRM, PLC
ELIZABETH J. ARLEO (CASB No. 201730)
1672 Main Street, Suite E, PMB 133
Ramona, CA 92065
Telephone: 760/789-8000
760/789-8081 (fax)
Email: elizabeth@arleolaw.com

THE CONSUMER LAW GROUP
Alan M. Mansfield (SBN 125998)
alan@clgca.com
9466 Black Mountain Rd., Suite 225
San Diego, CA 92126
Tel: (619) 308-5034
Fax: (888) 341-5048

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DEBRA ANN BAILEY, both individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>    v.<br><br>HOUSEHOLD FINANCE CORPORATION OF CALIFORNIA, et al.,<br><br>    Defendants. | CASE NO.: 10-CV-0857-WQH (RBBx)<br><br>CLASS ACTION<br><br>**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT HOUSEHOLD FINANCE CORP., ET AL.'S MOTION TO DISMISS PORTIONS OF PLAINTIFF'S FIRST AMENDED COMPLAINT**<br><br>Date:    **August 9, 2010**<br>Time:   **11:00 a.m.**<br>Place:   **Courtroom 4**<br>Judge:  **Hon. William Q. Hayes** |

**TABLE OF CONTENTS**

**Page**

I.   INTRODUCTION ..................................................................................................1

II.  PLAINTIFF HAS STANDING TO ASSERT A UCL CLAIM SINCE SHE PROPERLY ALLEGES INJURY IN FACT FOR UCL PURPOSES ...............................1

III. PLAINTIFF MAY PROPERLY ASSERT A PENAL CODE SECTION 632 CLAIM AGAINST HSBC BANK NEVADA AS THE CARDMEMBER AGREEMENT IS EITHER IRRELEVANT OR RAISES DISPUTED FACTS...............9

IV.  CONCLUSION ................................................................................................... 13

# TABLE OF AUTHORITIES

**Page**

## FEDERAL CASES

*AR Int'l Anti-Fraud Sys v. Pretoria Nat'l Central Bureau of Interpol*, 2009 U.S. Dist. LEXIS 60543 (E.D. Cal., July 15, 2009) .................................................................................. 9

*Cahill v Liberty Mut. Ins. Co.*, 80 F.3d 336 (9th Cir. 1996) ........................................................ 1

*Cervantes v. City of San Diego*, 5 F.3d 1273 (9th Cir. 1993) ..................................................... 9

*Citizens for Better Forestry v. USDA*, 341 F.3d 961 (9th Cir. 2003) .......................................... 5

*Lazar v. Trans Union LLC*, 195 F.R.D. 665 (C.D. Cal. 2000) .................................................... 1

*Lee v. City of Los Angeles*, 250 F.3d 668 (9th Cir. 2001) ...................................................... 9, 10

*Lodge 1380, Bhd, of Ry., Airline & S.S. Clerks v. Dennis*, 625 F.2d 819 (9th Cir. 1980) .......... 9

*Mack v. South Bay Beer Distrib.*, 798 F.2d 1279 (9th Cir. 1986) ............................................. 10

*Membrila v. Receivables Perf. Mgt. LLC*, 2010 WL 1407274 (S.D. Cal., Apr. 10, 2010) ......... 11

*North Star Int'l v. Arizona Corp. Comm'n*, 720 F.2d 578 (9th Cir. 1983) .................................. 9

*Parrino v. FHP, Inc.*, 146 F.3d 699 (9th Cir. 1988) .................................................................... 9

*Rosales v. Citibank*, 133 F.Supp.2d 1177 (N.D. Cal. 2001) .................................................... 3, 4

*Westlands Water Dist. v. Firebaugh Canal*, 10 F.3d 667 (9th Cir. 1993) .................................. 1

*Witriol v. LexisNexis Group*, 2006 U.S. Dist. Lexis 26670 (N.D. Cal., Feb. 10, 2006) .......... 5, 6

## FEDERAL RULES AND STATUTES

Federal Rules of Civil Procedure

    Rule 12 ............................................................................................................................ 10, 11

Federal Rules of Evidence

    Rule 201 .................................................................................................................................. 9

## STATE CASES

*Arce v. Kaiser Foundation Health Plan, Inc.*, 181 Cal.App.4th 471 (2010) ............................. 10

*Aron v. U-Haul Co. of California*, 143 Cal.App.4th 796 (2006) ................................................ 5

*Californians for Diability Rts. v. Mervyn's*, 39 Cal.4th 223 (2006) ........................................ 2, 3

*Cel-Tech Communications, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal.4th 163 (1999) ......... 2

OPPOSITION TO DEFENDANT HFCS' MOTION   - ii -   CASE NO.: 10-CV-0857-WQH (RBBx)
TO DISMISS FIRST AMENDED COMPLAINT

# TABLE OF AUTHORITIES

**Page**

### STATE CASES (Cont'd)

*Cortez v. Purolator Air Filtration Products Co.*, 23 Cal.4th 163 (2000) ............................... 2, 7, 8

*Cruz v. PacifiCare Health Systems*, 30 Cal.4th 303 (2003) ............................................................ 2

*Day v. AT&T Corp.*, 63 Cal.App.4th 325 (1998) ....................................................................... 3, 4

*Hall v. Time Inc.*, 158 Cal.App.4th 847 (2008) ............................................................................. 5

*Huntingdon Life Sciences, Inc. v. Stop Huntingdon Animal Cruelty USA, Inc.*, 129 Cal.App.4th 1228 (2005) .................................................................................................. 6

*In re Tobacco II Cases*, 41 Cal.4th 1257 (2007) .......................................................................... 10

*In re Tobacco II Cases*, 46 Cal.4th 298 (2009) ............................................................. 2, 3, 5, 6, 7

*Kearney v. Salomon Smith Barney, Inc.*, 39 Cal.4th 95 (2006) ......................................... 10, 11, 12

*Mangini v. R.J. Reynolds Tobacco Co.*, 7 Cal.4th 1057 (1994) ................................................... 10

*Massachusetts Mutual Life Ins. Co. v. Superior Court*, 97 Cal.App.4th 1282 (2002) .................... 7

*Meyer v. Sprint Spectrum*, 45 Cal.4th 634 (2009) ......................................................................... 6

*Neal v. State Farm Ins. Cos.*, 188 Cal.App.2d 690 (1961) .......................................................... 12

*Nelson v. Pearson Ford*, 2010 Cal.App. LEXIS 1163 (Op. published July 15, 2010) ............. 2, 4

*People v. Ratekin*, 212 Cal.App.3d 1165 (1989) ........................................................................ 12

*Prata v. Superior Court*, 91 Cal.App.4th 1128 (2001) .................................................................. 2

*Progressive West Ins. Co. v. Superior Court*, 135 Cal.App.4th 263 (2005) .................................. 6

*Rich & Whillock, Inc. v. Ashton Development, Inc.*, 157 Cal.App.3d 1154 (1984) ....................... 8

*Stock v. Meek*, 35 Cal.2d 809 (1950) ............................................................................................ 8

### STATE STATUTES AND RULES

California Business & Professions Code

    Section 17200, *et seq.* ........................................................................................ 1

California Penal Code

    Section 632 ............................................................................................... 9, 11

1  Representative Plaintiff Debra Ann Bailey ("Plaintiff") hereby opposes the Motion to
2 Dismiss Portions of Plaintiff's First Amended Complaint filed by Defendants Household Finance
3 Corporation of California ("Household" or "HFC"), HSBC Card Services, Inc. ("HSBC Card
4 Services") and HSBC Bank Nevada, N.A. ("HSBC Bank Nevada") [Docket #20].

## I. INTRODUCTION

For purposes of this motion, this Court must accept all "well-plead" facts as true. *Westlands Water Dist. v. Firebaugh Canal*, 10 F.3d 667, 670 (9th Cir. 1993). Further, this motion is only limited to considering information contained in the pleadings, and the allegations of the operative Complaint must be construed in the light most favorable to plaintiffs. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996). Because plaintiffs are the masters of the Complaint, the Court should not involve itself in tampering with the Complaint absent a strong reason for doing so. *Lazar v. Trans Union LLC,* 195 F.R.D. 665, 668 (C.D. Cal. 2000).

Despite these requirements, Defendants make arguments that attempt to negate or ignore the well-pled facts in the operative Complaint regarding Plaintiff's standing to assert claims under the Unfair Competition Law, Cal. Bus. & Prof. Code §17200, *et seq*. ("UCL"), or which contradict her allegations regarding her lack of consent to surreptitiously record telephone calls by improperly requesting judicial notice of a generic, undated, and unsigned purported Cardmember agreement outside the four corners of the operative Complaint. In fact, the First Amended Complaint ("FAC") contains the allegations Defendants contend are lacking or that they improperly attempt to factually dispute. Applying the proper standards for a motion to dismiss, this motion must be denied.

## II. PLAINTIFF HAS STANDING TO ASSERT A UCL CLAIM SINCE SHE PROPERLY ALLEGES INJURY IN FACT FOR UCL PURPOSES

Defendants do not attack the underlying sufficiency of the UCL claim as pled, or that class members may be entitled to injunctive relief to stop the harassing practices of multiple automated telephone calls and illegal automated recordings of confidential communications or restitution where appropriate. Rather, Defendants assert Plaintiff does not adequately allege that she suffered "injury in fact and a loss of money or property" in order to maintain a claim as a

1  class representative under the UCL – which they concede only she, not others, need to allege.

2  Yet the FAC expressly alleges that Plaintiff, in order to stop Defendants' harassing and illegal

3  conduct, expended and paid monies both to HFC and others.  *See* FAC at ¶89.

4   The UCL imposes strict liability where an unlawful or unfair business practice has been

5  sufficiently alleged.  *Cortez v. Purolator Air Filtration Products Co*., 23 Cal.4th 163, 180-181

6  (2000).  The focus of the UCL is "on the defendant's conduct, rather than the plaintiff's damages,

7  in service of the statute's larger purpose of protecting the general public against unscrupulous

8  business practices."  *Nelson v. Pearson Ford*, 2010 Cal.App. LEXIS 1163, (Op. published July

9  15, 2010).  As the Supreme Court held in *In Re Tobacco II Cases*, 46 Cal.4th 298, 312 (2009):

> The substantive right extended to the public by the UCL is the ""right to protection from fraud, deceit, *and unlawful conduct*"" (*Prata v. Superior Court*, 91 Cal.App.4th 1128, 1137 (2001)), and the focus of the statute is on the defendant's conduct.  As we have already observed, the proponents of Proposition 64 told the electorate that the initiative would not alter the statute's fundamental purpose of protecting consumers from unfair businesses practices.  Rather, the purpose of the initiative was to address a specific abuse of the UCL's generous standing provision by eliminating that provision in favor of a more stringent standing requirement.  That change, as we observed in *Mervyn's*, did not change the substantive law. ([*Californians for Disability Rts. v]. Mervyn's,* 39 Cal.4th 223, 232 [2006].)

*Id.* at 312 (emphasis added).

> [T]he Legislature … intended by this sweeping language to permit tribunals to enjoin on-going wrongful business conduct in whatever context such activity might occur. Indeed … the section was intentionally framed in its broad, sweeping language, precisely to enable judicial tribunals to deal with the innumerable " 'new schemes which the fertility of man's invention would contrive.'

*Cel-Tech Communications, Inc. v. Los Angeles Cellular Tel. Co*., 20 Cal.4th 163, 181 (1999).  If

Defendants' interpretation of UCL standing were adopted, a party could subject individuals to

illegal practices in numerous contexts, without recourse if the practice only resulted in

irreparable as compared to monetary harm.  *Cf. Cruz v. PacifiCare Health Systems*, 30 Cal.4th

303, 312 (2003) (nature of injunctive relief under UCL is "for the benefit of the general public

rather than the person bringing the action").

 There is no indication this was the intent of Proposition 64.  Indeed, as such a holding

under these circumstances would modify and eviscerate significant substantive rights under the

1  UCL, such a holding would be contrary to *Tobacco II* and *Mervyn's*, since if a person had to be
2  financially injured in the way Defendants assert, it would negate the concept of being able to
3  assert such a claim based on irreparable harm.  *In re Tobacco II Cases, supra*, 46 Cal.4th at 320
4  ("An injunction would not serve the purpose of prevention of future harm if only those who had
5  already been injured by the practice were entitled to that relief.")

6  Absent any legal authority, Defendants assert that "Plaintiff has not [lost money within
7  the meaning of the UCL] because she did not give any money or property to HSBC Bank
8  Nevada or HSBC Card Services as a result of the alleged calling practices."  Defs' Mem. at 8:15-
9  18.  However, the FAC alleges that Plaintiff incurred financial losses as a result of Defendants'
10 illegal conduct by: (i) sending $229 to Household in an effort to stop its harassing calls; (ii) paid
11 cellular telephone charges as a result of Defendants' voluminous calls; (iii) paid $100 to a
12 bankruptcy attorney in an attempt to stop the harassing calls from Defendants and, (iv) paid
13 monies to send certified letters to Household concerning the telephone calls.  FAC, ¶89.  There is
14 no requirement monies be paid to these companies in order to show standing under the UCL.

15 In *Rosales v. Citibank*, 133 F.Supp.2d 1177, 1181-82 (N.D. Cal. 2001), the Court denied
16 a motion to strike a UCL claim for restitution where defendant asserted the company did not
17 retain monies as a result of its illegal conduct.  The Court found a consumer asserted a
18 potentially recoverable loss where the financial institution retained funds that it was obligated by
19 law to pay consumers under the law.  In so holding, the Court in *Rosales* specifically rejected the
20 argument made by Defendants here regarding the supposed meaning of *Day v. AT&T Corp.*, 63
21 Cal.App. 4th 325 (1998):

> Citibank's argument is not persuasive and its reliance upon *Day* is misplaced. *Day* involved allegations that AT&T was engaged in an unfair or deceptive business practice by advertisements for telephone calling cards that did not disclose AT&T's practice of rounding up calls to the next whole minute. *The billing practice itself was not deceptive or unlawful*, although the advertisements were, and the relief which could be ordered was limited to only injunctive relief. Restitution could not be ordered because the "filed rate doctrine" insulated AT&T from any order that would have the effect of imposing a rate other than that approved by the FCC.  Thus, although there is language in *Day*, regarding the nature of the restitutionary remedy, suggesting that an order of restitution is available under the Unfair Competition Law only when the offending party has obtained something from the victim which it is not entitled to keep, the language is dicta.

1  *Rosales, supra*, 133 F.Supp.2d at 1181 (emphasis added).  Significantly here, and unlike in *Day*, the practices at issue (harassing telephone calls, surreptitious recordings, and calls to Plaintiff's cellular telephone) themselves *are* alleged to be deceptive and unlawful.

In addition, Defendants misapply *Day* because that pre-Proposition 64 opinion did not, as Defendants assert, create a UCL "standing test".  In fact, as noted in *Rosales, supra*, the Court in *Day* allowed the plaintiff to assert a claim for injunctive relief under the UCL.  *Day* only dealt with the limited issue whether a claim for restitution was preempted under the filed rate doctrine – a finding irrelevant to the standing claim at issue here.  Thus, *Day's* dicta statement provides no support for Defendants' motion.

In *Nelson, supra*, the Fourth District Court of Appeal recently addressed the question of standing of a class representative to assert a UCL claim.  In rejecting defendant's argument that plaintiff did not have standing, Judge McIntyre held that UCL standing existed where there is a causal connection between the wrong and the harm:

> Causation for UCL standing purposes is satisfied if "a causal connection [exists] between the harm suffered and the unlawful business activity." (*Daro v. Superior Court* (2007) 151 Cal.App.4th 1079, 1099 (*Daro*); accord, *Troyk [v. Farmers Group, Inc.* (2009) 171 Cal.App.4th 1305, 1349.])
>
> * * * *
>
> The failure of Pearson Ford to comply with the ASFA caused Nelson to suffer an injury and lose money as to both classes because he paid pre-consummation interest (the backdating class), and paid sales tax and financing charges on the insurance premium (the insurance class).  Unlike *Troyk*, these illegal charges violated the UCL and Pearson Ford improperly collected additional funds from Nelson. UCL causation exists because Nelson would *not* have paid pre-consummation interest, or sales tax and financing charges on the insurance premium had Pearson Ford complied with the ASFA. Because Nelson had standing to pursue claims under the UCL, we reject Pearson Ford's argument that the judgment in favor of both classes should be vacated to the extent it grants relief under the UCL.

*Nelson, supra,* 2010 Cal.App. LEXIS 1163 at *49-51.

Critically for purposes of this motion, in *Nelson* the excess money was not retained by Pearson Ford as it was for taxes, interest and finance charges.  Thus, even if Defendants were correct as to what Plaintiff should plead for UCL standing purposes (which Plaintiff disputes), she only needs to assert that she expended money that she would not have paid at the time if she

had not been exposed to illegal conduct. The FAC contains such allegations. *See* FAC, ¶84 (sent letter certified mail); ¶89 (paid $229 to HFC to stop calls, paid extra cell phone charges; paid money to bankruptcy attorney, and expended money to send letter certified mail).

In addition, the harm at issue suffered by Plaintiff and offending California's UCL is attributable and connected to being free from: (i) harassing phone calls that violate California's Rosenthal Fair Debt Collection Practices Act (FAC, ¶¶1, 28-82, 98-102); (ii) surreptitious recording of telephonic communications in violation of California's Invasion of Privacy Act (FAC, ¶¶1, 3, 81-87, 103-111); and (iii) calls to Plaintiff's cellular telephone in violation of the federal Telephone Consumer Protection Act (FAC, ¶¶1, 4, 28-82, 112-114). It should be enough to plead under the UCL and Article III that Plaintiff was in the zone of persons sought to be protected by the statutes in question and was exposed to such practices.[1] "To satisfy the injury in fact requirement, a plaintiff asserting a procedural injury must show that the procedures in question are designed to protect some threatened concrete interest of his that is the ultimate basis of his standing." *Citizens for Better Forestry v. USDA*, 341 F.3d 961, 969 (9th Cir. 2003).

However, Plaintiff goes further to plead her need to incur debts and pay money to stop this illegal conduct, which she would not have done if Defendants had complied with the law. FAC, ¶89. As noted in *Hall v. Time Inc.*, 158 Cal.App.4th 847 (2008), cited by Defendants (notably also decided before *In Re Tobacco II Cases, supra*), cases decided since Proposition 64 changed the language of the UCL have concluded a plaintiff suffers an injury in fact for purposes of standing when he or she has: (1) expended money due to the defendant's acts of unfair competition (*Aron v. U-Haul Co. of California*, 143 Cal.App.4th 796, 802–803 (2006) [plaintiff alleged he was required to purchase excess fuel from gas station when returning rental truck]; *Witriol v. LexisNexis Group*, 2006 U.S. Dist. Lexis 26670, *18–*19 (N.D. Cal., Feb. 10, 2006) [plaintiff incurred third-party costs to monitor and repair damage to his credit caused by defendants' unauthorized release of private information]; (2) lost money or property

---

[1] *See In re Tobacco II Cases, supra,* 46 Cal.4th at 325 n.16 (noting that Proposition 64's legislative history indicated intent of amendment was to apply U.S. Constitution Article III standing requirements, as compared to the "any person" standard that existed at the time).

1  (*Huntingdon Life Sciences, Inc. v. Stop Huntingdon Animal Cruelty USA, Inc.*, 129 Cal.App.4th
2  1228, 1240, 1262 (2005) (plaintiff's home and car were vandalized by animal rights protestors);
3  or (3) been denied money to which he or she has a cognizable claim (*Progressive West Ins. Co.*
4  *v. Superior Court*, 135 Cal.App.4th 263, 269–270, 285, fn. 5 (2005) (insurance company paid
5  insured's medical bills, then sued to recover that money when insured collected damages from
6  the third party who caused his injuries; insured had standing to bring UCL claim against
7  insurance company). *Cf.*, *Meyer v. Sprint Spectrum,* 45 Cal.4th 634, 640 (2009) (in discussing
8  the concept of "damage" for standing purposes under the Consumers Legal Remedies Act, a
9  consumer who had to expend transaction costs or opportunity costs in order to avoid
10 unconscionable conduct may suffer remediable loss). Notably, in most of the above instances
11 the courts did not need the money to be paid to defendant for standing purposes, but just
12 allegations of a loss or payment of money or property in general – which is what Plaintiff has
13 alleged in the FAC.
14 Here, Plaintiff alleges that due to her financial hardship she was trying to work out a
15 long-term lower payment plan with HFC. However, to stop the multiple daily phone calls being
16 made by HFC's unstoppable automated telephone system, she was forced to borrow money,
17 immediately pay additional money to HFC, incur additional cellular telephone charges and even
18 retain bankruptcy counsel *See* FAC, ¶89. Such allegations satisfy each of the above iterations of
19 the UCL's standing provision.
20 While Defendants try to assert there must be some type of reliance/causation element for
21 UCL standing purposes in all instances, the Supreme Court in *In Re Tobacco II Cases supra*, 46
22 Cal. 4th at 325, n. 17, noted that:

> We emphasize that our discussion of causation in this case is limited to such cases where, as here, a UCL action is based on a fraud theory involving false advertising and misrepresentations to consumers. The UCL defines "unfair competition" as "include[ing] any unlawful, unfair or fraudulent business act or practice . . . ." (§ 17200.) There are doubtless many types of unfair business practices in which the concept of reliance, as discussed here, has no application.

27 / / /
28 / / /

OPPOSITION TO DEFENDANT HFCS' MOTION        - 6 -        CASE NO.: 10-CV-0857-WQH (RBBx)
TO DISMISS FIRST AMENDED COMPLAINT

1    Here, Defendants assert a *non sequitur* – that because Plaintiff got what she paid for
2 (whatever that is, Defendants do not say), she cannot seek injunctive relief and attempt to stop
3 Defendants' illegal conduct, or obtain any form of restitution.  Under Defendants' reasoning, if
4 they were not unjustly enriched by their illegal conduct there is nothing a Court can do about it
5 under the UCL – despite the consistent contrary language of the Supreme Court in interpreting
6 the UCL.  The relevant allegation for standing purposes is that Defendants infringed on
7 Plaintiff's legal rights by engaging in conduct that violated California law – (i) harassing phone
8 calls which violate California's Rosenthal Fair Debt Collection Practices Act (FAC, ¶¶1, 28-82,
9 98-102); surreptitious recording of telephonic communications in violation of California's
10 Invasion of Privacy Act (FAC, ¶¶1, 3, 81-87, 103-111); and (iii) calls to plaintiff's cellular
11 telephone absent express permission in violation of the federal Telephone Consumer Protection
12 Act (FAC, ¶¶1, 4, 28-82, 112-114).  This appears to be the type of situation envisioned in
13 *Tobacco II* when it reiterated at page 326: "Moreover, as noted, before Proposition 64, California
14 courts have repeatedly held that relief under the UCL is available without individualized proof of
15 deception, reliance and injury. (*Massachusetts Mutual Life Ins. Co. v. Superior Court*, 97
16 Cal.App.4th 1282, 1288 (2002)."  Based on the Court's conclusion in *Tobacco II*, as set forth
17 *supra*, that Proposition 64 did not change the substantive elements of a UCL claim, for a court to
18 impose the type of reliance/causation and financial injury requirements asserted by Defendants
19 where one previously did not exist would alter the substantive law of the UCL, reiterated above,
20 that such elements are not required to assert a UCL claim -- particularly for a strict liability claim
21 under the "unlawful" prong of the UCL.

22    Finally, Defendants curiously assert that the "voluntary payment" defense somehow
23 exempts them from liability for engaging in the illegal conduct at issue because, in an effort to
24 stop the practice, Plaintiff "voluntarily" paid money (contradicting their argument she did not
25 suffer a loss of money or property for standing purposes).  This argument fails for several
26 reasons.

27    First, while equitable considerations can guide a court in fashioning equitable remedies,
28 such an affirmative defense does not bar a UCL claim. *Cortez, supra*, 23 Cal.4th at 179, 181

1  ("We agree that equitable defenses may not be asserted to wholly defeat a UCL claim since such
2  claims arise out of unlawful conduct. . . .  [W]hile we cannot foresee how any equitable
3  consideration could defeat a claim for unpaid wages, we cannot foreclose the possibility that
4  defendant has evidence that the trial court might consider relevant when, on remand, it fashions a
5  remedy for plaintiff's unfair business practice.").

6  Second, even if the voluntary payment defense applies in California (which is disputed),
7  it cannot be used to defend against an unlawful business practice where the relief is statutory
8  damages and criminal sanctions.  *See, e.g., Stock v. Meek*, 35 Cal.2d 809, 817-18 (1950)
9  (rejecting claim that violation of usury law was defeated by voluntary payment defense as law
10 permitted treble damages and criminal penalties; otherwise person could violate such law with
11 impunity simply by requiring payment).

12 Third, the defense has no application when, as Plaintiff has alleged throughout the FAC,
13 payments are made under coercion or duress, such as when the alternative is bankruptcy or
14 financial ruin.  *Rich & Whillock, Inc. v. Ashton Development, Inc*., 157 Cal.App.3d 1154, 1158-
15 59 (1984).   Thus, even if this defense had any relevance here, it does not bar Plaintiff from
16 maintaining claims under the UCL as a matter of law.

17 It would be a "Catch-22" outcome to conclude that, under these particular circumstances,
18 absent class members would not be required to show they lost money or a particular financial
19 injury as a result of being exposed to these particular illegal practices in order to obtain any form
20 of relief under the UCL, but because the Plaintiff must do so they cannot obtain such relief.  It is
21 sufficient to allege that Plaintiff was subjected to this illegal conduct and was intended under the
22 law to be protected from such conduct, since otherwise Defendants could engage in illegal
23 conduct without threat of being held responsible under the UCL.  As the FAC contains the
24 required allegations and more, Plaintiff has standing to assert claims under the UCL and should
25 be permitted to proceed with such claims.

26 / / /
27 / / /
28 / / /

III. **PLAINTIFF MAY PROPERLY ASSERT A PENAL CODE SECTION 632 CLAIM AGAINST HSBC BANK NEVADA AS THE CARDMEMBER AGREEMENT IS EITHER IRRELEVANT OR RAISES DISPUTED FACTS**

Defendant HSBC Bank Nevada argues certain small print disclosures within a particular "Cardmember Agreement and Disclosure Statements and amendments" preclude Plaintiff's illegal recording claims under Penal Code §632. Defendant's assertion is based solely on a generic, undated and unsigned purported "operative agreement" that neither contains Plaintiff's name nor any indicia relating the document to Plaintiff. Def. Mem. 1:26-27, *see also* 4:7-9. Defendants attach the purported agreement as "Exhibit A" to their Request for Judicial Notice in Support of Motion and Motion to Dismiss Portions of Plaintiff's First Amended Complaint (the "RJN") [Docket #20-2]. Defendants assert that "Exhibit A" is the "Cardmember Agreement and Disclosure Statements and amendments" for Plaintiff's credit card account with HSBC Bank Nevada. RJN at 1:4. Notably, Defendants needed to blow up the operative language in its Motion to Dismiss papers to numerous times its actual size just to make it appear readable. In fact, this language is buried in microscopic print in the middle of that document. *Compare* Defs' Mem. at 4:23-27 to Defendants' RJN, Ex. A at 15.

Defendants' assertion that "Exhibit A" is the "Cardmember Agreement and Disclosure Statements and amendments" for Plaintiff's credit card account with HSBC Bank Nevada, and that it controls the outcome of this Motion, implicates evidence outside of the FAC, which cannot be considered on a motion to dismiss. *See Cervantes v. City of San Diego*, 5 F.3d 1273, 1274 (9th Cir. 1993); *North Star Int'l v. Arizona Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983) (citing *Lodge 1380, Bhd, of Ry., Airline & S.S. Clerks v. Dennis*, 625 F.2d 819, 824 (9th Cir. 1980)). On a motion to dismiss, only in two limited circumstances may courts consider documents not attached to, or specifically incorporated by reference in, the complaint. The first is when the authenticity of the extrinsic document is not questioned and the complaint "necessarily relies" on the document. *Parrino v. FHP, Inc.,* 146 F.3d 699, 706-07 (9th Cir. 1988); *AR Int'l Anti-Fraud Sys v. Pretoria Nat'l Central Bureau of Interpol*, 2009 U.S. Dist. LEXIS 60543 (E.D. Cal., July 15, 2009), at *26. The second is when the document is a "matter of public record" of which the court may take judicial notice under Fed. R. Evid. 201. *Lee v.*

1  *City of Los Angeles*, 250 F.3d 668, 688-89 (9th Cir. 2001); *Mack v. South Bay Beer Distrib.*, 798
2  F.2d 1279, 1282 (9th Cir. 1986).

3      Here, neither exception applies.  As indicated in Plaintiff's opposition to Defendants'
4  Request for Judicial Notice filed herewith, the relevance and authenticity of this document is
5  questioned and the FAC does not rely upon or reference it.  Nor is it a matter of public record.
6  Moreover, a request for judicial notice only can be used to establish that the particular item
7  exists.  It cannot be used or considered for purposes of this Motion to contradict facts based on
8  the supposed truth of the statements contained therein.  *See Mangini v. R.J. Reynolds Tobacco*
9  *Co.*, 7 Cal.4th 1057, 1063-64 (1994); *overruled on other grounds In re Tobacco II Cases*, 41
10 Cal.4th 1257, 1276. (2007); *Arce v. Kaiser Foundation Health Plan, Inc.*, 181 Cal.App.4th 471,
11 482 (2010).  *See also* Plaintiff's Memorandum in Support of Objection and Request to Strike
12 Exhibit A, at p. 3.  Plaintiff objects to the submission and consideration of "Exhibit A" as
13 hearsay and disputes its authenticity in terms of its relevance to Plaintiff.  In her RJN opposition
14 brief, Plaintiff further requests that "Exhibit A" be stricken because it is outside the FAC and
15 therefore cannot be considered under Rule 12(b)(6) of the Federal Rules of Civil Procedure and
16 controlling Ninth Circuit law on a motion to dismiss.  While HFC may be able to make this
17 argument later, it cannot do so on this motion.

18     Even if this Court considered the language contained in the purported "agreement", it
19 does not support Defendant's Motion to Dismiss because such language cannot as a matter of
20 law constitute adequate notice that a telephone call will be recorded and/or monitored.  In
21 *Kearney v. Salomon Smith Barney, Inc.*,  39 Cal.4th 95 (2006), the California Supreme Court
22 rejected this specific argument, explaining that Defendants' customers would *not* know or have
23 reason to know that their telephone calls were being recorded absent an explicit advisement at
24 the outset of a telephone call rather than a generic statement:

25     In one passage in its opinion, the Court of Appeal suggested that even in the
    absence of an explicit advisement, clients or customers of financial brokers such
26     as SSB "know or have reason to know" that their telephone calls with the brokers
    are being recorded. The Court of Appeal, however, did not cite anything in the
27     record or any authority establishing such a proposition as a matter of law, and in
    light of the circumstance that California consumers are accustomed to being
28     informed at the outset of a telephone call whenever a business entity intends to

>   record the call, it appears equally plausible that, in the absence of such an advisement, a California consumer reasonably would anticipate that such a telephone call is not being recorded, particularly in view of the strong privacy interest most persons have with regard to the personal financial information frequently disclosed in such calls.

*Id*. at 118.

Defendants further argue that Rule 12(b)(6) dismissal is warranted by reasoning that, even if the purported "agreement" did not constitute express consent to the recording because Plaintiff would reasonably expect that the communication may be overheard or recorded. Def. Mem. at 16:3-6. However, in *Kearney*, the California Supreme Court stated that for purposes of a pleadings motion, it could not assume that the telephone conversations at issue were not "confidential communications" within the meaning of Penal Code §632. *Id.* Here, the FAC alleges that Plaintiff believed the telephonic communications would be treated as confidential communications and that Plaintiff "*reasonably expected* that her telephonic communications with Defendants would not be recorded without her express authorization *at the beginning* of the telephone communication." FAC, ¶3 (emphasis added). *See also Membrila v. Receivables Perf. Mgt. LLC*, 2010 WL 1407274 (S.D. Cal., Apr. 10, 2010) (denying motion to dismiss on grounds plaintiff was aware call was being recorded; company that does not adequately advise individual at the inception of a telephone call that call is being recorded can be held liable for violation of Penal Code Section 632, citing *Kearney*). For the same reasons, this Court cannot assume as a matter of law that the telephonic communications between Plaintiff and Class members and Defendants where confidential financial situations are being discussed were not confidential communications, or that a statement buried in an unauthenticated, purported "agreement" provided appropriate notice.

The Court should also reject Defendants' assertion that Plaintiff consented to the recording and/or monitoring of the calls via the language of the purported "agreement" between Plaintiff and HSBC Bank Nevada. First, the question whether HSBC Bank Nevada's written statement is adequate – small print legalese in the middle of a form notice versus an oral warning at the outset of the actual telephonic communication as discussed in *Kearney* – is necessarily a

1  question of fact under *Kearney*. Second, arguably HSBC Bank Nevada's so-called 'privacy'
2  agreement is void as the purported "agreement" is a contract of adhesion.[2]

3  Third, and most telling, the 'privacy' provision on which Defendants rely is reasonably
4  susceptible to different interpretations, which must be construed against HSBC Bank Nevada.
5  The language Defendants wish this Court to consider is: "[y]ou agree that *our supervisory*
6  *personnel* may listen and record telephone calls between you and our representatives in order to
7  evaluate the quality of our service to you and to other cardmembers." Defs' Mem. 15:27-16:3
8  (citing RJN, Exhibit A at 11 (emphasis added). Plaintiff alleges that Defendants call their
9  customers using an "auto-dial system." FAC, ¶91. A provision that purportedly notifies Plaintiff
10 that a *supervisor* may record or monitor the calls is materially different than Defendants'
11 admissions that the calls are recorded automatically via an "extensive call center system" that
12 uses licensed software and records millions of calls full-time and part-time. Cal. Penal Code
13 §632 envisions prohibiting the use of equipment to intercept and record confidential
14 communications. *People v Ratekin*, 212 Cal.App.3d 1165 (1989).

15 As admitted in Defendants' May 19 and May 20, 2010 submissions to Magistrate Judge
16 Brooks – which include relevant admissions by Defendants – contrary to this written "privacy"
17 statement Defendants effectively used wiretap equipment that determined which calls would be
18 recorded. The filings describe in detail how Defendants randomly record and or monitor
19 millions of confidential telephonic communications with their customers. *See* Ex Parte
20 Application For Order Regarding Preservation of Electronic Recordings of Telephone Calls;
21 Memorandum of Points and Authorities ("Ex Parte App.") and Declarations of Todd E. Folkes
22 ("Folkes Decl.") and Brenda J. Wolfe in Support Thereof, [Docket #7], at 3:16 ("HSBC has
23 implemented an extensive call center system for the millions of consumer credit transactions
24 serviced by its various affiliates.") 4:4-6 ("A percentage of the calls made every month are

---

[2] "The term [contracts of adhesion] signifies a standardized contract, which, imposed and drafted by the party of superior bargaining strength, relegates to the subscribing party only the opportunity to adhere to the contract or reject it." *Neal v. State Farm Ins. Cos.,* 188 Cal.App.2d 690, 694 (1961).

1 recorded so that collection agents can be monitored and reviewed by the HSBC Quality group to
2 ensure compliance with HSBC policies and applicable rules and regulations.  Reports of the
3 monitored calls are prepared and maintained."); 6:16-22 ("Household and its affiliates, as part of
4 an ongoing assurance program, randomly monitors a statistically significant percentage of all
5 calls each month. 0.2% involve situations where an agent violated company policy by failing to
6 give the required disclosure."). *See also* supporting Declaration of Todd Folkes (Docket #7-2),
7 ¶¶2, 7-10 for description of automated recording system.  If HFC's admissions are correct, it is
8 not supervisors at HSBC Bank Nevada that record such calls, but rather an automated software
9 system licensed by a third party vendor and managed by HSBC Technology & Services for
10 Defendants' parent company, HFC Finance Corporation, that records millions of calls on a
11 routine basis.   Thus, whether HSBC Bank Nevada's privacy statement materially differs from
12 Defendants' actual practice is yet another factual issue that cannot properly be resolved on a
13 motion to dismiss.

## IV.    CONCLUSION

15     For all of the above reasons, Defendants' motion to dismiss should be denied and
16 Defendants ordered to file an Answer to the FAC so that this matter can proceed to the merits.

17 DATED:  July 22, 2010                Respectfully submitted,

18                                       THE CONSUMER LAW GROUP

19                                       By:    S/Alan M. Mansfield
                                              ALAN M. MANSFIELD
20                                            alan@clgca.com
                                       9466 Black Mountain Rd., Suite 225
21                                     San Diego, CA 92126
                                       Tel: (619) 308-5034 / Fax: (888) 341-5048

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

ARLEO LAW FIRM, PLC

By:   S/Elizabeth J. Arleo
      ELIZABETH J. ARLEO
      elizabeth@arleolaw.com
1672 Main Street, Suite E, PMB 133
Ramona, CA 92065
Telephone: 760/789-8000/ Fax: 760/789-8081

Attorneys for Plaintiff